Leſſee of STEPHEN BAYARD *v.* CHARLES M'INNES.

EJECTMENT for 209¼ acres of land, on a leaſe dated 2d *January*, 1785.

The plaintiff ſhewed a location No. 1293, dated 3d *April*, 1769, in the name of *Samuel Thomſon*, for 300 acres, in *Turtle* creek bottom, adjoining a claim and improvement of *Eneas McKay*, and including his own improvement; a ſurvey of 209¼ acres, made by *William Thomſon*, the deputy ſurveyor, 30th *June*, 1769; and a patent to *Samuel Bayard* and *Elizabeth* his wife, and *Samuel McKay*, reciting the location and ſurvey, and a deed from *Samuel Thomſon* to *Eneas McKay*, dated 21ſt *May*, 1769.

1796.

The defendant produced a location, No. 3400, dated 13th *June*, 1769, in his own name, for 100 acres on *Turtle* creek, between the two croffings, joining *Angus M'Kay* on the eaft, including his improvement; a furvey of 116 acres, and 90 perches, made by *John Henderfon*, then deputy furveyor, 10th *December*, 1784; and a patent, dated 19th *April*, 1786.

*Brackenridge*, for the defendant, then read a written copy of an act of affembly paffed 3d *February*, 1768, and of a proclamation by the governor, dated 24th *February*, 1768, reciting this act of affembly; both directing the removal of perfons fettled on lands not purchafed from the *Indians*, but providing that this fhould not extend to fettlers under the approbation or permiffion of the commanding officers to the weftward.

He then propofed to produce a witnefs to prove that *Charles M'Innes* had the approbation and permiffion of the officer commanding at *Fort-Pitt*, to fettle on the main roads or communications leading through this province to *Fort-Pitt*; and that, in confequence of this approbation and permiffion, *Charles M'Innes* fettled on the land in queftion, which was on a main road and communication.

*Rofs*, for the plaintiff, objected to any parole teftimony; 1. Becaufe fuch permiffions muft have been given in writing; 2. Becaufe *Charles M'Innes's* application does not recite it; and 3. Becaufe, where there was no *written* permiffion, the commiffioners of property could not take notice of it.

*Brackenridge.* It is not required, either by the law or the proclamation, that the permiffion or approbation fhould be written. 2. It is not neceffary, that a fettler with permiffion fhould recite his permiffion in his location. The adverfe applicant ought to have known, whether or not there was a fettler with permiffion on the ground for which he applied. It was not to be fuppofed, that the applicant was to make his application or location at random, or on a map; but to take care that his application was for ground unclaimed under any authority.

*Woods*, for the plaintiff. The preamble to the opening of the Land-Office, 3d *April*, 1769, gives a preference

U 3

* See Appendix.

to thofe who had fettled plantations, efpecially thofe who had fettled by permiffion of the commanding officers to the weftward.* But, notwithftanding the permiffion, if an improvement was not made till after the purchafe from the *Indians* at *Fort-Stanwix*, no preference was to be given. But the preference was given only to thofe who applied on 3d *April*, 1769. For, if the perfon *permitted*, and to be preferred, did not apply on that day, he loft his preference. It was prefumed, that, unlefs he applied then, he waved his preference. The proprietaries were then at liberty to grant the land to any other, and were not to keep up a preference to the fettler any longer: for if they muft keep it up for a day, they might be obliged to keep it up thirty years.

*Brackenridge.* The word *approbation* implies, that there was no neceffity for a written permiffion. Settlement with the knowledge is evidence of the *approbation*, of the commanding officer; and not being turned off, is permiffion. It behoved the applicant to apply only for land to which none other had a better claim. All applicants were fuppofed to know the ground, and they deceived the proprietor, if they made not a juft reprefentation.

The objection of the lofs of preference, unlefs application was made on 3d *April*, 1769, is the only formidable objection. From 1736, in confequence of the minority of the proprietors, legal titles could not be granted; and, on application to Mr. *Logan*, the agent, he permitted fettlements, and gave a promife of titles, when the proprietors fhould be of age. After the proprietors were of age, in confequence of lord *Baltimore's* claim to the fouthern border of *Pennfylvania*, *permits* were given to fettle, and fupport the jurifdiction. This was an origin of a cuftom, that fettlers had an equitable right, and the proprietors were bound to give them a title; and courts of juftice invariably determined fo, and directed in favour of improvers. Under this idea, people came over the mountains. The act of affembly, which I have read, fanctioned this before the purchafe only if it was by permiffion. The proclamation of the governor, alfo a proprietor, is to the fame effect. The preamble to the opening of the Land-Office refpected only the locations put into the box or trunk; and took

not away any right vested in those who had settled by
permission. The preamble regulated only the preference
between locations then put in, and took not away the
right under the usage of *Pennsylvania*. It could not
have been its intention to take away this right. The
people of this country had no notice. There was but
one gazette in *Philadelphia*. There was no post, nor
advertisement. The settler depended not on the acts
of the government, but on the strokes of his axe on the
ground; and thought the man must be a robber, who
would take away his land, from which all, but he
who had *permission*, were banished by a law and a pro-
clamation.

PRESIDENT. It may, on the whole be best, to re-
ceive the testimony: but we will reserve the point;
that, if there should be a verdict for the defendant, there
may be a motion for a new trial.

Evidence was then given, that *M'Innes*, in 1768,
asked captain *Edmonstone*, the commanding officer at
*Fort-Pitt*, for a permission for a piece of land. *Edmon-
stone* said he could give no permission to settle but on
the road, and desired him to go and find a piece of land
on the road, and come to him, and he would give him a
permission. Immediately after this, *M'Innes* sent a man
to this place, who grubbed, a week, and made four or
five hundred rails, in the bottom between the two ford-
ings of the creek, where he has his house and clearing
now. And in *March*, 1769, he built a cabbin there,
twenty-five feet square, and covered it. *M'Kay* knew
of *M'Innes* working there, and gave directions, that he
should not be permitted to clear over his marked line,
which he pointed out. *M'Innes* then lived at some dis-
tance, and settled another plantation, which he after-
wards sold. In 1770, or 1771, there was corn raised
at *M'Innes's* improvement on *Turtle* creek; but he did
not live there till 1782, or 1783.

The plaintiff then produced evidence, that the present
deputy surveyor had traced the lines of the patent, and
found corresponding line and corner marks on the trees;
and that the survey of *M'Innes* interfered with those lines.
Evidence was then given, that *M'Kay* had taken out the
location in the name of *Samuel Thomson*, and had paid

U 4

for the furvey; that the conveyance from *Thomfon* was not to be found; that *M'Kay* had forbidden *M'Innes* to work on this land; that *M'Innes* had agreed to forbear, if *M'Kay* would give him 4*l.* to pay for the furveying of another tract; that *M'Kay* and *M'Innes* agreed to fubmit it to three men to value *M'Innes's* improvement; and that they valued it, (being, as appeared from a writing produced by the plaintiff, dated 15 *November*, 1770, figned by them, a cabbin, without roof or door, with a few rails deadened) at 45*s.*

PRESIDENT. The title is clearly in the plaintiff; unlefs it has been divefted by fome act of *M'Kay's.*— You will enquire, 1. Whether there was any agreed line; and 2. Whether, if there was, *M'Innes* has relinquifhed his claim under it, by a fubfequent tranfaction.

Verdict for the plaintiff.

NOTE. In this cafe, a fpecial jury had been ordered; (at a term in which the caufe was not tried) and Mr. *Brackenridge* moved that the cofts be paid by the plaintiff, on whofe motion it was ordered.

PRESIDENT. The cofts ought to be paid by the party putting off, or lofing the caufe. The bill of fees directs this.